UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **The Western and Southern Life Insurance Company** | |
| and | Case No. 1:23-cv-00742 |
| **Western & Southern Agency Group Long Term Incentive and Retention Plan** | Judge _____ |
| and | |
| **The Western and Southern Life Insurance Company Executive Committee** | |
| 400 Broadway<br>Cincinnati, Ohio 45202 | |
| Plaintiffs, | |
| v. | |
| **Ronald J. Sagasser** | |
| 1037 Weng Ave.<br>Dayton, Ohio 45420 | |
| Defendant. | |

## COMPLAINT

For their Complaint against defendant, Ronald J. Sagasser ("Defendant"), plaintiffs The Western and Southern Life Insurance Company ("WSLIC"), Western & Southern Agency Group Long Term Incentive and Retention Plan ("Plan"), and The Western and Southern Life Insurance Company Executive Committee ("Executive Committee") (collectively, "Plaintiffs") state as follows:

## Parties

1. WSLIC is organized in the State of Ohio with its principal place of business at 400 Broadway, Cincinnati, Ohio 45202. The Plan was established by and is maintained by WSLIC. WSLIC and its affiliates are hereinafter referred to as the "Company."

2. The Plan is an unfunded nonqualified deferred compensation arrangement that is intended to provide incentive compensation to select key field associates of the Company, including the Western & Southern Agency Group. The Plan is exempt from certain provisions of the Employee Retirement Income Security Act of 1974 ("ERISA") as a "top-hat plan" but is otherwise governed by ERISA.

3. The Executive Committee and its designees, including, but not limited to, the Benefits Department and Benefits Appeals Committee of the Company, administer the Plan.

4. Defendant is a former employee of WSLIC residing at 1037 Weng Avenue, Dayton, Ohio 45420.

## Jurisdiction and Venue

5. Plaintiffs' claims arise under ERISA and federal common law. Subject matter jurisdiction therefore exists under 29 U.S.C. § 1132.

6. The Plan is administered in Hamilton County, Ohio. Additionally, Section 7.1 of the Plan establishes this Court as the exclusive jurisdiction and venue for claims related to the Plan. Defendant expressly consented to personal jurisdiction and venue in this Court in Section 7.1 of the Plan. Therefore, venue is proper in this Court. The Court also has personal jurisdiction over Defendant because he resides in this judicial district.

**Facts**

*The Plan*

7. The Plan is designed to provide an incentive for selected key filed associates of the Company to maximize performance and remain with the organization, and to enable the Company to attract well-qualified candidates.

8. A true and accurate copy of the Plan is attached as **Exhibit 1**.

9. "Participant[s]" in the Plan are awarded "Performance Units" that accumulate in a "Performance Unit Account." A Performance Unit Account is a bookkeeping account, set up on the books of WSLIC, for each Participant in the Plan to whom Performance Units are credited.

10. Generally, Performance Units credited to a Performance Unit Account vest on the seventh anniversary date of the award, assuming the Participant to whom the Performance Units were awarded has been continuously employed by WSLIC or an affiliate since the date of the award. Other vesting scenarios are outlined in Section 3.3 of the Plan.

11. After Performance Units vest, they are eligible to be distributed to the Participant to whom they were awarded, assuming various requirements set forth in Sections 4.3 and 4.4 of the Plan are met.

12. The Plan also has a forfeiture provision, which reads in relevant part as follows:

> 4.7 **Forfeitures**. The contingent right of a Participant or Beneficiary to receive future payments hereunder and to maintain those benefits paid under the Plan with respect to both vested and nonvested Performance Units shall be forfeited, and, in any case of benefits payable or paid, shall be subject to cancellation, recoupment, rescission, payback or other action to be taken by the Company, upon the occurrence of any one or more of the following events:
>
> (a) If the Participant is involuntarily terminated from employment for Cause by the Company or any Affiliate.

13. Section 4.7 also provides that "[e]ach Participant expressly consents to [WSLIC's] application, implementation, and enforcement of . . . Section 4.7, and expressly agrees that the Company may take such actions as are necessary to effectuate the provisions in Section 4.7 without further consent or action being required by the Participant."

### *Defendant Is Awarded Performance Units Under the Plan*

14. Defendant worked for WSLIC as a Financial Representative, among other roles.

15. During the course of his employment, Defendant was selected to participate in the Plan.

16. Defendant was ultimately awarded 72 Performance Units.

17. As of June 2022, 66 of the 72 Performance Units awarded to Defendant had vested and were distributed to Defendant in the amount of $282,468.00.

### *Defendant Is Involuntarily Terminated for Cause*

18. In June 2022, the Company received a client complaint stating that Defendant had misappropriated client funds and forced a client to execute a promissory note in the amount of $185,000 for the repayment of those funds.

19. Upon receiving notice of the client complaint, Defendant was immediately placed on paid suspension on June 3, 2022, while the Company investigated the complaint.

20. Defendant was evasive and not forthright when interviewed about the complaint by representatives of the Company.

21. Defendant ultimately admitted to the existence of the promissory note and payments to the client totaling $67,000 via cashier checks. Defendant further admitted to falsifying client account documents.

22. Defendant also failed to adhere to the terms of his paid suspension. He improperly remained in contact with clients, handled client funds while suspended, and visited Company offices. Defendant engaged in this conduct despite clear direction from the Company in a June 3, 2022 letter, stating that he could not perform work for the Company, communicate in any way with Company associates or clients, or visit Company offices while suspended.

23. The Company's investigation concluded on June 20, 2022. In light of the findings, three Company HR executives (a divisional vice president, assistant vice president, and a senior vice president) agreed that Defendant should be involuntarily terminated for cause for violation of Company policies, including the Western & Southern Financial Group Code of Conduct and Business Ethics, Western & Southern Agency Sales Practices policy, Western & Southern Agency Manual and Code of Ethics, and the terms of the suspension letter issued to Defendant on June 3, 2022 by Western & Southern Agency Human Resources.

24. A true and accurate copy of the "Termination Recommendation" is attached as **Exhibit 2**.

25. Defendant was terminated on June 21, 2022.

26. A true and accurate copy of the "Notice of Termination" delivered to Defendant is attached as **Exhibit 3**.

*Defendants' Performance Units Are Forfeited and Subject to Recoupment*

27. On July 8, 2022, the Company's Benefits Department notified Defendant that, as a result of his involuntary termination for violation of Company policies, his 6 unvested Performance Units were automatically forfeited, and that the Performance Units distributed to him in the amount of $282,468.00 were subject to recoupment pursuant to Section 4.7(a) of the Plan.

28. The Benefits Department also found that the Company had paid Social Security and Medicare taxes on the vested Performance Units in the amount of $14,706.07, bringing the total amount owed by Defendant to the Company to $297,174.07.

29. A true and accurate copy of the letter that the Benefits Department sent to Defendant is attached as **Exhibit 4**.

30. On August 2, 2022, Defendant, through counsel, appealed the Benefit Department's decision regarding his Performance Units.

31. Defendant's appeal did not argue that the Benefits Department incorrectly interpreted or applied the terms of the Plan. Defendant also did not argue that the Company's findings in its Termination Recommendation were incorrect. Rather, Defendant lodged unsupported accusations regarding the basis for his termination, claiming that the Company's "tactics are violations of the ADEA as well as many other statutes which will be enumerated upon completion of discovery[,]" and that the timing of Defendant's termination was "extremely suspicious" due to his impending retirement.

32. A true and accurate copy of Defendant's appeal is attached as **Exhibit 5**.

33. On November 3, 2022, the Company's Appeals Committee, as designee of the Executive Committee, denied Defendant's appeal.

34. The Appeals Committee identified the relevant provisions of the Plan, the evidence that it considered in deciding the appeal, and the specific reasons for its denial.

35. The Appeals Committee applied the plain language of Section 4.7(a) of the Plan, which states that nonvested and vested Performance Units are subject to forfeiture and recoupment if the Participant, like Defendant, is involuntarily terminated for cause for violation of Company policies.

36. The Appeals Committee also responded to Defendant's arguments regarding the basis for his termination, explaining that "the timing of the employment termination was the result of events occurring in June 2022, including the receipt of a client complaint and the investigation that necessarily occurred thereafter."

37. A true and accurate copy of the Appeals Committee's decision is attached as **Exhibit 6**.[1]

## Count 1

### (*Reimbursement/recoupment under 29 U.S.C. § 1132(a)(3)*)

38. Plaintiffs incorporate the allegations in the preceding paragraphs by reference.

39. ERISA plans and plan administrators alike can pursue equitable claims for reimbursement and recoupment under 29 U.S.C. § 1132(a)(3) if the terms of the governing ERISA plan so allow.

40. In this case, Section 4.7 of the Plan allows such claims and states that "Performance Units . . . shall be subject to cancellation, recoupment, rescission, payback or other action taken by the Company . . . [i]f the Participant is involuntarily terminated from employment for Cause . . . ." "Cause" is defined in Section 1.1(a)(7)(A) of the Plan to mean, among other things, "the failure of an Employee to adhere to Company rules or procedures, or to perform his duties faithfully, competently, and in accordance with the standards determined by the Company for the position and title which he holds . . . ."

---

[1] The appeal decision was delayed to allow Defendant to have adequate time to respond to the Benefits Department's findings and to submit additional information in support of his arguments. True and accurate copies of correspondence with Defendant's attorney regarding the timing of the Appeals Committee's decision are attached as **Exhibit 7**.

41. Additionally, Defendant "expressly consented to the Company's . . . enforcement of . . . Section 4.7 and expressly agree[d] that the Company [could] take such actions as are necessary to effectuate . . . Section 4.7."

42. The Company's Benefits Department and Appeals Committee, as designees of the Executive Committee, both reasonably decided that Defendant was involuntarily terminated for Cause as a result of his violation of multiple Company policies.

43. According to Section 6.5(c) of the Plan, these decisions cannot be overturned absent "an abuse of discretion based on the evidence and theories the claimant presented during the claims procedure."

44. No abuse of discretion occurred because the Benefits Department's and Appeals Committee's decisions are supported by the record evidence and the plain language of the Plan.

45. Therefore, Plaintiffs are entitled to recoup the Performance Units distributed to Defendant and other sums due and owing.

## Count 2

### (*Reimbursement/recoupment under federal common law*)

46. Plaintiffs incorporate the allegations in the preceding paragraphs by reference.

47. ERISA plans and plan administrators can also purse equitable claims reimbursement and recoupment under federal common law if the terms of the Plan so allow.

48. Section 4.7 of the Plan allows such claims and states that "Performance Units . . . shall be subject to cancellation, recoupment, rescission, payback or other action taken by the Company . . . [i]f the Participant is involuntarily terminated from employment for Cause . . . ." "Cause" is defined in Section 1.1(a)(7)(A) of the Plan to mean, among other things, "the failure of an Employee to adhere to Company rules or procedures, or to perform his duties faithfully,

8

competently, and in accordance with the standards determined by the Company for the position and title which he holds . . . ."

49. Additionally, Defendant "expressly consented to the Company's . . . enforcement of . . . Section 4.7 and expressly agree[d] that the Company [could] take such actions as are necessary to effectuate . . . Section 4.7."

50. The Company's Benefits Department and Appeals Committee, as designees of the Executive Committee, both reasonably decided that Defendant was involuntarily terminated for Cause as a result of his violation of multiple Company policies.

51. According to Section 6.5(c) of the Plan, these decisions cannot be overturned absent "an abuse of discretion based on the evidence and theories the claimant presented during the claims procedure."

52. No abuse of discretion occurred because the Benefits Department's and Appeals Committee's decisions are supported by the record evidence and the plain language of the Plan.

53. Therefore, Plaintiffs are entitled to recoup the Performance Units distributed to Defendant and other sums due and owing.

### Prayer for Relief

**WHEREFORE**, Plaintiffs request that the Court enter judgment in their favor as follows:

A. That the Court enter judgment in favor of Plaintiffs and against Defendant;

B. That the Court require Defendant to reimburse Plaintiffs in the amount of $297,174.07;

C. That Plaintiffs be awarded all interest, costs, and fees incurred in bringing and prosecuting this action, including, but not limited to, an award of attorney fees; and

9

D.      That the Court award any other relief that it deems appropriate.

Respectfully submitted,

/s/ *Eric W. Richardson*
Eric W. Richardson (0066530)
    Trial Attorney
Joseph M. Brunner (0085485)
Wesley R. Abrams (0095746)
Vorys, Sater, Seymour and Pease LLP
Great American Tower, Suite 3500
301 East Fourth Street
Cincinnati, Ohio 45202
Tel: (513) 723-4000
Fax: (513) 852-7885
ewrichardson@vorys.com
jmbrunner@vorys.com
wrabrams@vorys.com

*Attorneys for Plaintiffs*